IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PHILLIP S. DUNN,

                                            OPINION and ORDER

                Plaintiff,

                                            15-cv-430-bbc

    v.

RON SECORD, SHAWN KUDRON,
DAN ULRICH and NATHAN POKE,

                Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Phillip Dunn is proceeding on two claims in this case: (1) in October 2014, Dan Ulrich, Nathan Poke, Shawn Kudron and Ryan Secord (all officers for the La Crosse County Police Department) searched his home and arrested him without adequate justification and in an unreasonable manner, in violation of the Fourth Amendment; and (2) in December 2014, defendants Ulrich and Poke seized plaintiff without adequate justification, in violation of the Fourth Amendment. Defendants have filed a motion for summary judgment, dkt. #31, which is ready for review. For the reasons stated below, I am granting the motion for summary judgment with respect to defendant Kudron and with respect to plaintiff's second claim. However, I am denying the motion with respect to

---

[1] In his complaint, plaintiff named "Ryan Secord," but defendants say that Secord's first name is Ron. Because plaintiff does not dispute defendants' representation, I have amended the caption to reflect the correct name.

plaintiff's claim that defendants Secord, Ulrich and Poke entered his home without a warrant, kicked down his door and arrested him, in violation of the Fourth Amendment.

OPINION

A. October 2014 Search and Seizure

Plaintiff's first claim arises out of his arrest on October 28, 2014 for drug possession. Defendant Shawn Kudron (a captain for the La Crosse Police Department), directed defendants Ron Secord, Dan Ulrich and Nathan Poke (police officers for the department) to respond to a local resident's complaint of possible drug activity at 1929 Victory Street #13 in La Crosse, Wisconsin. After they arrived on the scene, defendants Secord, Ulrich and Poke entered plaintiff's home without a warrant, kicked down his bedroom door and arrested him. Plaintiff contends that all four defendants can be held liable under the Fourth Amendment for each of those actions.

1. Effect of state court proceedings

A threshold question is whether previous litigation has any effect on the claims in this case. Allen v. McCurry, 449 U.S. 90, 105 (1980) (issue preclusion may apply to Fourth Amendment issues resolved in state court). Both sides refer to a criminal prosecution against plaintiff arising out of the evidence discovered during the October 28, 2014 search of plaintiff's home. However, neither side says whether plaintiff raised objections under the Fourth Amendment during state court proceedings or, if he did, how the court ruled on those

objections. To the extent that the state court addressed any of the issues raised in this case, neither side argues that the state court's rulings should have preclusive effect, so I do not consider that issue. Jaskolski v. Daniels, 427 F.3d 456, 460 (7th Cir. 2005) (issue preclusion is affirmative defense and can be waived).

Further, although plaintiff is incarcerated now, it appears to be for reasons unrelated to this case. Again, the parties do not discuss this point, but a review of Wisconsin's Circuit Court Access website shows that the charges related to this case were dismissed. State v. Dunn, No. 2014-cf-717, available at https://wcca.wicourts.gov. In any event, defendants do not argue that plaintiff's claims are barred by a previous conviction, so that issue is forfeited as well. Carr v. O'Leary, 167 F.3d 1124, 1126 (7th Cir. 1999).

2. Defendant Kudron

I am granting defendants' motion for summary judgment as to defendant Kudron. A defendant cannot be held liable for violating the Constitution unless he participated in the alleged conduct or otherwise caused it. Backes v. Village of Peoria Heights, Illinois, 662 F.3d 866, 869-70 (7th Cir. 2011). In this case, it is undisputed that Kudron was not present when the other three defendants engaged in the allegedly unconstitutional conduct. Although Kudron directed the other defendants to respond to a complaint, simply going to a home and knocking on the door does not qualify as a "search" or "seizure" under the Fourth Amendment. Carter v. Buscher, 973 F.2d 1328, 1332 (7th Cir.1992) ("[P]re-seizure conduct is not subject to Fourth Amendment scrutiny."). Plaintiff does not allege that

Kudron told the other defendants to enter plaintiff's home without a warrant, kick down his door or arrest him. In fact, plaintiff does not allege that there is any way that Kudron could have foreseen any of the events that occurred after the other defendants arrived at plaintiff's home. Accordingly, I see no basis for holding defendant Kudron liable for any of the alleged conduct in this case.

3. Defendants Secord, Ulrich and Poke

The parties agree that Secord, Ulrich and Poke entered plaintiff's home without a warrant, kicked down his bedroom door and arrested him for drug possession. The question is whether each of those actions was justified under the Fourth Amendment.

a. Entry into plaintiff's home

Defendants acknowledge that generally they would need a warrant to enter a private home, Kentucky v. King, 563 U.S. 452, 459 (2011), and that they did not have one in this case. However, a warrant is not needed if the officers obtain consent from someone with authority to give it. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Defendants say that they had authority to enter the home because John Addis, a tenant at the residence, answered the door and gave them his consent to enter.

Plaintiff does not deny that Addis had authority to give consent to a search. Rather, he denies that Addis ever gave consent. In his declaration, plaintiff avers that Secord admitted during the preliminary hearing in state court that he did not have permission to

4

enter plaintiff's home. Dkt. #51 at ¶¶ 35-36. (In his brief, plaintiff raises a different objection that any consent Addis may have given was not voluntary, dkt. #49 at 3-4, but plaintiff cites no evidence to support that allegation, so I have not considered it.)

In response, defendants raise two objections to plaintiff's testimony. First, they say that it is

> based upon inadmissible evidence and lacks foundation. . . . The response does not establish that plaintiff has any personal knowledge of the subject conversation between Addis and the officers or of the officers' entry into the premises. The response does not dispute that the plaintiff was in the bedroom off the front living area this whole time.

Dfts.' Reply to Plt.'s Resp. to Dfts.' PFOF ¶ 19, dkt. #54. This objection is without merit. Although it is undisputed that plaintiff was not present at the doorway when Secord spoke to Addis, defendants do not deny that plaintiff was present at the state court hearing that plaintiff discusses in his declaration, so plaintiff has personal knowledge of the statements that Secord allegedly made at the hearing. Because Secord is a party to this case, the rule against hearsay does not prohibit plaintiff from relying on any statements Secord made to prove any fact relevant to plaintiff's claims. Fed. R. Evid. 801(d)(2)(A). Of course, Secord has foundation to know whether Addis gave consent, so defendants' objection regarding lack of foundation is misplaced.

Second, defendants say that plaintiff's declaration "does not contradict the record of sworn testimony supporting the proposed fact or previously sworn testimony or the state court's findings during the warrant process." Dfts.' Reply to Plt.'s Resp. to Dfts.' PFOF ¶ 19, dkt. #54. This objection is puzzling. Defendant Secord's alleged statement that Addis did

not give him consent to enter obviously contradicts his other testimony that Addis did give consent. Further, on a motion for summary judgment, I am required to view the evidence in the light most favorable to plaintiff, Loudermilk v. Best Pallet Co., LLC, 636 F.3d 312, 314-15 (7th Cir. 2011), so, at this stage, I must credit plaintiff's testimony that Secord admitted that defendants did not obtain consent, even if defendants testified on other occasions that they did. It may be that plaintiff is misstating Secord's testimony from the state court hearing, but defendants have not a provided a transcript of the hearing, so there is no way to resolve the dispute now.

Defendants raise a qualified immunity defense as well. Under that doctrine, a defendant cannot be held liable for money damages if it was not clearly established at the relevant time that the defendant's conduct violated the Constitution. Carroll v. Carman, 135 S. Ct. 348, 350 (2014). Qualified immunity does not help defendants because even qualified immunity does not change the rule that facts must be construed in favor of the nonmoving party on a motion for summary judgment. Board v. Farnham, 394 F.3d 469, 476 (7th Cir. 2005). If I construe the facts in plaintiff's favor, as I am required to do, then a reasonable jury could find that defendants did not have consent to enter plaintiff's home. In October 2014, it was clearly established that police officers need a warrant to enter a home unless they meet one of the exceptions to the warrant requirement identified by the Supreme Court. Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.") (internal quotations omitted). Because consent

is the only exception that defendants rely on in their motion and it is genuinely disputed whether John Addis gave consent, I am denying defendants' motion for summary judgment with respect to the question whether defendants Secord, Ulrich and Poke violated plaintiff's Fourth Amendment rights by entering his home.

b. Entry into plaintiff's bedroom

As I discussed in the order screening plaintiff's claims, dkt. #9 at 7-8, the "fruit of the poisonous tree" doctrine does not apply in civil cases. Whitwell v. Hoyt, No. 04–C–981–C, 2006 WL 469634 (W.D. Wis. Feb. 26, 2006). Accord Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999); Wren v. Towe, 130 F.3d 1154, 1158 (5th Cir. 1997). See also Dyson v. Village of Midlothian, No. 12-cv-7632, 2015 WL 778850, at *7 (N.D. Ill. Feb. 18, 2015) ("Although the Seventh Circuit has not expressly adopted the ruling in Townes rendering the fruit of the poisonous tree doctrine inapplicable to civil suits, courts in this Circuit appear to uniformly apply [the ruling]."). The gist of the rulings in these cases is that one unlawful action by an officer does not taint later actions by the officer; each action must be evaluated separately when determining whether it violated the Fourth Amendment. In the context of this case, this rule means that plaintiff cannot argue successfully that the decisions to break his door down and arrest him were unlawful simply because defendants should not have been in the house in the first place. Rather, the question is whether defendants had adequate justification for performing those acts at the time they occurred.

Just as plaintiff cannot prove that entering his bedroom was unlawful because defendants allegedly failed to obtain consent to enter the house, defendants cannot rely on any consent that Addis gave them to enter the house as justification for entering plaintiff's bedroom. United States v. Richards, 741 F.3d 843, 850 (7th Cir. 2014) (consent to enter common area of home does not include consent to enter bedrooms). Thus, defendants' decision to break down plaintiff's door and forcibly enter his bedroom violated the Fourth Amendment unless defendants can show that the decision falls into one of the exceptions to the warrant requirement. Defendants rely on two of those exceptions, "exigent circumstances" and "protective sweep."

1) exigent circumstances

Under the exigent circumstances doctrine, the question is "whether it was reasonable for the police officers on the scene to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant." Sutterfield v. City of Milwaukee, 751 F.3d 542, 557 (7th Cir. 2014). Exigent circumstances may exist "when there is a danger posed to others by the occupant of a dwelling, as when the occupant is armed and might shoot at the police or other persons" or when there is a risk of "the imminent destruction of evidence." Id. In this case, defendants rely on two facts in support of a finding of exigent circumstances.

First, after entering plaintiff's home, both paraphernalia for using illegal drugs and substances that appeared to be illegal drugs were in plain view throughout the home. Dfts.'

8

PFOF ¶ 26 and Plt.'s Resp. to Dfts,' PFOF ¶ 26, dkt. #54 (no dispute that "clear plastic gem bag" was on table in living area and that bag contained "small crystal-like shards" that appeared to methamphetamine); id. at ¶ 28 (no dispute that "several hypodermic needles" and "a glass pipe with burn marks around it" were on table in living area); id. at ¶ 33 (no dispute that Addis had several needles in his bedroom); id. at ¶ 51 (no dispute that small bag of what appeared to be marijuana was in bag on couch in living room).

Second, when defendants asked Addis whether anyone else was in the home, Addis stated that two others were in the bedroom. Id. at ¶ 42. However, when defendants tried repeatedly to speak to the occupants of the bedroom through a closed and locked door, no one responded. Id. at ¶¶ 55-57, 61-62. (The parties dispute whether defendants knocked on the door. Plaintiff says that he did not answer the door because he was sleeping.)

In short, because defendants discovered illegal drugs throughout the home and the occupants of the room were refusing to respond, defendants argue that they had a reasonable belief that the occupants posed a safety risk or were destroying evidence.

Defendants cite several cases to support their argument, but none are on point. First, they cite United States v. Marshall, 157 F.3d 477, 482 (7th Cir. 1998), for the proposition that a reasonable belief about potential destruction of evidence related to a drug crime qualifies as exigent circumstances. However, in Marshall, the question was whether exigent circumstances justified a warrantless entry into a home, not into a single, locked bedroom. If a suspect has access to an entire house, it is much more likely that he could dispose of drugs by flushing them down a toilet or rinsing them down a drain. King, 563 U.S. at 461

("Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain."). In this case, however, defendants do not identify any reason they would have believed that plaintiff had the ability to destroy evidence in a locked bedroom while one or more of the defendants guarded the room and another officer obtained a warrant. Thus, I am not persuaded by defendants' argument that they needed to kick plaintiff's door down because of a concern about destruction of evidence.

With respect to safety concerns, defendants cite United States v. Kempf, 400 F.3d 501 (7th Cir. 2005), and United States v. Cantero, 995 F.2d 1407 (7th Cir. 1993), but these cases are not helpful either. In Kempf, 400 F.3d at 502, the police entered a house without a warrant because they believed reasonably that someone had been shot inside, facts that bear no resemblance to this case.

In Cantero, the court did not even address any Fourth Amendment issues; rather, that case was about sentencing. Defendants quote the statement that "drug dealers often carry weapons to protect themselves and their large amounts of drugs and cash." Cantero, 995 F.2d at 1412. However, even if I apply that observation to the exigent circumstances doctrine, defendants do not develop an argument that they had a reasonable belief that anyone in the home was a drug dealer or had a weapon. Although defendants saw drug paraphernalia and what they believed to be illegal drugs around the home, defendants do not allege that they viewed large quantities of drugs or that they had any other reason to believe that the residents of the home were dealers rather than mere users.

In their brief, defendants say that "they knew [plaintiff] to be a player in the City's drug trade." Dkt. #37 at 8. However, the evidence defendants cite to support that allegation is not helpful. Defendant Ulrich says that another occupant in the home told him that "PJ" was in the bedroom and that Ulrich knew that "PJ" was plaintiff's "street nickname." Dfts.' PFOF ¶¶ 58-59, dkt. #54. Ulrich does *not* say that he believed at the time that the "PJ" in the bedroom was plaintiff, but even if he did, he does not allege that he knew anything about past drug distribution, weapon use or violence by plaintiff. Defendant *Poke* says that he "knew [plaintiff] to be involved in the use and distribution of illegal drugs," but he does not provide a foundation for that belief, other than to say that he had had "contact" with plaintiff in the past. Poke Decl. ¶ 21, dkt. #35. In any event, Poke does not say that he knew or even suspected that plaintiff was the "PJ" present in the bedroom.

Defendants cite no authority for the view that it is reasonable to believe that anyone who uses illegal drugs is likely to use weapons. Further, defendants identify no behavior they observed suggesting that anyone in the house posed a threat. Particularly because plaintiff was in a locked bedroom, it is not clear why defendants would believe that there was a "compelling need to act and no time to obtain a warrant." Sutterfield, 751 F.3d at 557.

2) protective sweep

Alternatively, defendants argue that they were entitled to conduct a "protective sweep" of the house. They quote the statement in United States v. Contreras, 820 F.3d 255, 268 (7th Cir. 2016), that "officers may take steps to assure themselves that the house in

which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack."

One problem with this argument is that defendants do not say that they were conducting an arrest at the time that they were trying to gain entry into plaintiff's bedroom; they were simply conducting an investigation. Second, even if I assume that officers may conduct a protective sweep *before* an arrest, the purpose of conducting the sweep is to minimize the possibility of an "ambush" from unknown occupants in the home. Maryland v. Buie, 494 U.S. 325, 333 (1990) ("An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings."). See also United States v. Henderson, 748 F.3d 788, 792-93 (7th Cir. 2014) (citing cases for proposition that protective sweep is justified when there is "threat of ambush"). In this case, defendants already knew that someone was in the room and they do not identify any way that plaintiff could have gotten out of the room without their knowing about it, so an ambush seems an unlikely possibility. In short, defendants have not shown as a matter of law that they needed to conduct a protective sweep before obtaining a warrant.

### 3) qualified immunity

Again, defendants rely on the doctrine of qualified immunity, and again I conclude that they are not entitled to it at this stage of the case. It was clearly established that defendants needed a warrant to enter plaintiff's bedroom unless they satisfied one of the exceptions to the warrant requirement. Because defendants have not identified any

exception that would apply in this case, I am denying their motion for summary judgment as to plaintiff's claim that they violated his Fourth Amendment rights by kicking down his door and entering his bedroom without a warrant.

c. Arrest

After entering the bedroom, defendants Secord, Ulrich and Poke handcuffed and arrested plaintiff for possession of illegal drugs and drug paraphernalia. Defendants include no discussion in their briefs about their justification for the arrest, so I am denying their motion for summary judgment as to this claim as well.

B. December 2014 Traffic Stop

On December 2, 2014, defendants Ulrich and Poke conducted a traffic stop of plaintiff in La Crosse, Wisconsin. Defendants provide two justifications for the stop: (1) plaintiff's brake lamp was not working; and (2) defendant Poke was aware that plaintiff had an outstanding warrant for his arrest. Although plaintiff questions defendants' allegation about his brake lamp, Plts.' Resp. to Dfts.' PFOF ¶¶ 106 and 110, dkt. #54, he does not deny the existence of the arrest warrant, Plt.'s Resp. to Dfts.' PFOF ¶¶ 102 and 109. The parties do not discuss the reason for the warrant, but plaintiff does not identify any reason that defendants would have to question the validity of the warrant, so I conclude that defendants were entitled to rely on it. Bailey v. City of Chicago, 779 F.3d 689, 695 (7th Cir. 2015) (determination whether officers' action is legal made from facts officers knew

when seizure occurred). Accordingly, I am granting defendants' motion for summary judgment as to this claim.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Shawn Kudron, Ron Secord, Dan Ulrich and Nathan Poke, dkt. #31, is GRANTED with respect to the following claims: (1) in October 2014, defendant Kudron allegedly participated in entering plaintiff Phillip Dunn's home without a warrant, kicking down his door and arresting him, in violation of the Fourth Amendment; and (2) in December 2014, defendants Ulrich and Poke conducted a traffic stop of plaintiff, in violation of the Fourth Amendment. Plaintiff's complaint is DISMISSED as to these claims and as to defendant Kudron.

2. Defendants' summary judgment motion is DENIED with respect to plaintiff's claims that defendants Secord, Ulrich and Poke entered his home without a warrant, kicked his door down and arrested him, in violation of the Fourth Amendment.

Entered this 21st day of September, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge