IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PHILLIP S. DUNN,

                                                                       OPINION and ORDER

                Plaintiff,

                                                                       15-cv-430-wmc

     v.

RON SECORD, DAN ULRICH
and NATHAN POKE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Phillip Dunn brought this lawsuit under 42 U.S.C. § 1983, asserting claims against various public officials and the City of La Crosse, Wisconsin. At different stages of the case, the court dismissed most of these claims as a matter of law, but the court permitted plaintiff to submit to a jury his claim that defendants Ron Secord, Dan Ulrich and Nathan Poke (all officers for the La Crosse Police Department) violated his Fourth Amendment rights by entering his locked bedroom without a warrant. Ultimately, the jury found in defendants' favor (dkt. #88) and the court entered judgment in accordance with that verdict. (Dkt. #94.) Plaintiff subsequently moved for a new trial (dkt. #101) and for the court's recusal (dkt. #102). For the reasons discussed below, the court will now deny both motions.

BACKGROUND

The claim the jury considered arose out of a response to a tip from a local resident of possible drug activity at 1929 Victory Street in La Crosse, Wisconsin. Defendants Secord, Ulrich and Poke went to the residence to investigate. After they arrived on the scene, a tenant at the residence, John Addis, allowed defendants to enter the home without a warrant. After speaking with Addis and looking around the common areas of the house, defendants kicked down a locked bedroom door. Defendants found plaintiff inside the room and arrested him for drug possession. The question at trial was whether defendants were justified in entering the bedroom without a warrant.[1]

OPINION

**I. Motion for Recusal**

Plaintiff asks the court to recuse itself under 28 U.S.C. § 455, which requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," § 455(a), or if he "has a personal bias or prejudice concerning a party," § 455(b). Plaintiff supports his motion with declarations from himself and a relative who reports attending the trial. (Dkt. ##101, 102.)

Most of plaintiff's grounds for recusal relate to rulings by the court during the course of the trial. As an initial matter, plaintiff (perhaps understandably) overlooks significant rulings that went in his favor, such as the denial of part of defendants' motion

---

[1] Given the narrow issues presented by plaintiff's motions, the court addresses the underlying facts as they become relevant to the opinion below.

for judgment as a matter of law and the decision over defendants' objection to instruct the jury that a tenant at the residence, John Addis, had not given his consent to enter the bedroom where plaintiff was located. Instead, plaintiff seems to be objecting primarily to a ruling related to the "protective sweep" doctrine, which the court will discuss in the next section. In any event, adverse rulings generally are not grounds for seeking recusal, *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009), and plaintiff fails to identify any *extraordinary* circumstances in this case suggesting that any of the court's rulings show bias against him, nor am I aware of any.

Plaintiff's only other ground for recusal is a comment made by the court at the conclusion of the trial, after the jury returned its verdict and was excused from the courtroom. In particular, the court acknowledged the difficult and dangerous work that police officers do and mentioned an incident in which a high school friend (not a relative, as plaintiff says in his declaration) was killed when responding to a domestic dispute. Plaintiff says that the comment shows "why the Judge would side with the defendants rather than be impartial." (Dunn Decl. ¶ 10, dkt. #104.) Plaintiff does not explain his objection further, but the court sees two possible bases for the objection: (1) the experience of my friend would make it difficult for the court to be impartial; and (2) regardless whether the court's relationship with the friend would show bias, the court's statement does.

As an initial matter, plaintiff overlooks the context in which the court made the statement. The court had already acknowledged that plaintiff raised legitimate questions

3

as to whether defendants should have acted as they did. It was only after those statements that the court also acknowledged that it understood why defendants (and the jury) adopted a different view.

In any event, the law is clear that a judge's life experiences or relationships or sympathetic statements are generally not grounds for recusal. *Carlson v. Bukovic*, 621 F.3d 610, 623 (7th Cir. 2010) (referring to defendant in civil rights case as "this poor cop" during pretrial conference did not require recusal because it did "not display a deep-seated favoritism or antagonism that would make fair judgment impossible") (internal quotations omitted); *United States v. Mansoori*, 304 F.3d 635, 667 (7th Cir. 2002) (recusal not required in criminal drug case when judge's daughter was dating agent in Drug Enforcement Administration); *Fero v. Kerby*, 39 F.3d 1462, 1479 (10th Cir. 1994) (recusal not required when judge's brother-in-law could have benefitted financially from particular outcome); *United States v. Fisher*, No. 11-40054-JAR, 2011 WL 4809806, at *4 (D. Kan. Oct. 11, 2011) (judge not required to recuse herself in drunk driving case even though judge's brother was killed by drunk driver); *In re Disqualification of Farmer*, 2014-Ohio-2046, ¶ 2, 10 N.E.3d 718 (recusal not required when judge was "married to a sergeant in the Alliance Police Department who is in a supervisory position over the officers who made the arrest in this case and are listed as witnesses for the trial"); *Com. v. Urrutia*, 653 A.2d 706, 710–11 (Pa. Sup. Ct. 1995) (recusal not required in stalking case even though judge had been victim of stalking in the past).

In *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1372 (7th Cir. 1994), the court explained why a judge's life experiences generally are not grounds for recusal:

> In the real world, "possible temptations" to be biased abound. Judges are human; like all humans, their outlooks are shaped by their lives' experiences. It would be unrealistic to suppose that judges do not bring to the bench those experiences and the attendant biases they may create. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a "possible temptation" to be biased. But not all temptations are created equal. We expect—even demand—that judges rise above these potential biasing influences, and in most cases we presume judges do. . . [O]nly a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness.

Thus, in *Del Vecchio*, 31 F.3d at 1675, the court concluded that a judge was not required to recuse himself in a criminal case even though that judge had been the prosecutor in a different case against the same defendant 14 years earlier.

Although likely of no comfort to this plaintiff, I can also assure plaintiff that the experiences of my friend had no bearing on any rulings in the case. Indeed, even in high school, he was not a particularly close friend; I saw him in passing perhaps a handful of times in the two decades that followed, and it was years after our last encounter that a close, mutual friend relayed what had befallen him. Still, Officer Michael Baribeau was a good man, and I mourn his passing on December 19, 1995, while in the line of duty, and think of him, as well as his family's and his community's loss, every time I pass the Wisconsin Law Enforcement Memorial on the Capital square, which bears his name with too many others. So, too, however, do I mourn the loss of innocent lives on either side of the thin blue line, and believe that perspective enhances, rather than diminishes, my

5

respect for all involved in situations like that befalling the plaintiff here, as well as my resolve to give a fair hearing to all who come before me, very much including this plaintiff. Moreover, the statements the court made after the jury returned its verdict in this case simply represented an attempt to explain to both sides the reasons for the trial *and* the reasons to respect the jury's verdict.

## II. Motion for a New Trial

Ironically enough, given the above, plaintiff does not directly challenge any of the court's rulings in his motion for a new trial. Instead, plaintiff claims he is entitled to a new trial because the verdict is against the weight of the evidence. To prevail on such a motion, a party must do more than show that the verdict is wrong. *Whitehead v. Bond*, 680 F.3d 919, 928-29 (7th Cir. 2012). Rather, he must show that no rational jury could have rendered the verdict or that the verdict shocks the conscience. *Plyler v. Whirlpool Corp.*, 751 F.3d 509, 513 (7th Cir. 2014); *Willis v. Lepine*, 687 F.3d 826, 836-37 (7th Cir. 2012). Plaintiff cannot meet that burden.

At trial, defendants relied primarily on a safety rationale to justify their entry into plaintiff's bedroom. Although plaintiff disputes some of defendants' testimony, the court must draw all reasonable inferences in favor of the jury's verdict. *Davis v. Wessel*, 792 F.3d 793, 803 (7th Cir. 2015). Accordingly, the court accepts as true defendants' version of events. In particular, defendants testified that they came to plaintiff's residence because of a tip about possible illegal drug use or distribution there. After

6

plaintiff's fellow tenant Addis gave defendants consent to enter their residence (but not plaintiff's locked bedroom), defendants observed illegal drugs in the common areas of the home. When defendants asked Addis if anyone else was present, Addis became nervous and brought defendant Ulrich into the bathroom; once there, Addis asked Police Officer Ulrich to close the door and turn on the fan so no one else could hear them. Addis then told the officer that two people were "hiding" in the bedroom. Addis did not say they were co-tenants or otherwise identify who they were.

For his part, Officer Ulrich testified that in his experience, individuals who are hiding when they know police are present generally are not doing so "for good reasons." As a result, the defendants knocked on the bedroom door, but no one responded. Under these circumstances, the officers believed that the occupants of the bedroom may pose of a safety threat.

The jury was required to answer a single question to determine liability: "Has plaintiff Phillip Dunn proven by a preponderance of the evidence that defendants Ron Secord, Dan Ulrich and Nathan Poke were not justified in entering plaintiff's locked bedroom without obtaining a search warrant?" (Dkt. #88.) The jury instructions identified two grounds that could have provided the necessary justification:

> [O]fficers do not need a warrant to enter a private room such as plaintiff Dunn's locked bedroom if there are important reasons for entering the room and there is insufficient time to obtain a search warrant from a judge.
>
> One reason is that the officers had a reasonable belief that there were "exigent circumstances" for entering the room. Exigent circumstances may exist where there is a compelling need to act, without enough time to secure

> a warrant. Such circumstances may include preventing the destruction of evidence or reasonable concerns for the safety of officers or others.
>
> Another reason is called a "protective sweep." An officer may conduct a protective sweep of the house if the officer has a reasonable belief that the sweep is necessary to protect the officers from an ambush.

(Dkt. #86 at 3.)

In his four-page opening brief, plaintiff does not develop an argument that no rational jury could have found defendants were justified in entering his room under either the exigent circumstances doctrine or the protective sweep doctrine. Rather, he devotes most of his brief to issues that the jury was not asked to consider. First, he says that defendants acted "under color of law," but that issue was undisputed at trial, so it was not included on the special verdict form or the jury instructions. Second, he says that, John Addis, his fellow tenant at the residence, did not give defendants consent to enter the bedroom, but again the jury did not consider that issue. Indeed, the court instructed the jury as a matter of law that "John Addis did *not* give defendants permission to enter plaintiff Dunn's bedroom." (*Id*. (emphasis added).)

In fairness, plaintiff does make conclusory assertions in his opening brief that defendants' entry was not justified under any exception to the warrant requirement, but he does not discuss the actual evidence presented at trial or otherwise develop an argument to support his assertions. On the contrary, plaintiff's only support is a citation to the court's summary judgment opinion, but that opinion is not evidence, as the court informed plaintiff in the pretrial order. (Dkt. #58 at 6.) Accordingly, the court

concludes that plaintiff has failed to show that the jury's verdict is against the manifest weight of the evidence.

In his reply brief, plaintiff raises new arguments to support his motion, but he does not explain why he failed to raise them in his opening brief. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). Even if I consider these arguments, however, he has not shown that he is entitled to a new trial. For example, plaintiff relies primarily on testimony from defendant Ulrich that one of the occupants of the house told him that someone named "PJ" was in the bedroom, and Ulrich knew (or at least believed) that "PJ" was the plaintiff and should have known from his previous interactions with plaintiff that he was not dangerous. Even if the jury accepted this logic, plaintiff did not establish at trial the extent of his previous interactions with Ulrich. Moreover, the fact that plaintiff had not used violence against Ulrich in the past would not determine whether plaintiff posed a safety threat. As noted above, defendants did not rely on a history of violence as a justification for entering the bedroom. Rather, they relied on: Addis's statement that plaintiff was hiding; Addis's nervous behavior when discussing plaintiff; the presence of drugs in the home; and plaintiff's refusal to respond to defendants' knocking. Perhaps each of these factors in isolation would not be enough to sustain the jury's verdict. In combination, however, they are sufficient to show that defendants had a reasonable belief that the occupants of the bedroom posed a threat to the officers' safety, as well as the safety of those civilians still around them.

Alternatively, plaintiff challenges the jury instructions indirectly with an argument that the court should not have allowed defendants to proceed with a theory under the "protective sweep" doctrine. In particular, he points in his reply brief to a statement in the court's summary judgment opinion noting that the cases cited by defendants under the protective sweep doctrine all involved searches incident to arrest and that defendants had not arrested anyone at the time they entered the bedroom. (Pl. Reply Br. (dkt. #106) at 3 (citing S.J. Op. (dkt. #57) at 12).) Plaintiff seems to be asserting that the court held as a matter of law in its summary judgment opinion that defendants could not proceed with a theory under the protective sweep doctrine. That is obviously incorrect. Rather, Judge Crabb simply concluded defendants had not shown that *they* were entitled to judgment as a matter of law (dkt. #57 at 12), so the issue would have to proceed to trial.

Moreover, plaintiff did not move for summary judgment, so the court did not consider whether he should prevail outright. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) ("[A] court cannot sua sponte [on its own motion] enter summary judgment . . . without notifying the parties of its intentions and allowing them an opportunity to cure the defect in the complaint or to respond."). Regardless, as it turns out, the law is on defendants' side, even if they failed to cite that law in their summary judgment or post trial briefs. In *United States v. Starnes*, 741 F.3d 804 (7th Cir. 2013), the court rejected the view that the protective sweep doctrine applies only when officers are making an arrest:

> The philosophy behind a protective sweep . . . remains the same regardless of how the officers arrived in the home. When officers enter the residence of a criminal suspect and have reason to believe that a particular area might harbor an individual . . . who poses a danger to the officers or others, the Fourth Amendment permits a quick and limited protective sweep . . . Thus *the constitutionality of a protective sweep does not depend on whether that sweep is incidental to a search warrant, an arrest warrant, or a consensual search*. What matters are the specific facts that would give a reasonable officer, who is lawfully inside a home, a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the area swept harbored an individual posing a danger to the officer or others.

*Id.* at 810 (emphasis added; internal quotations, citations and alterations omitted). Accordingly, the court concludes that it was not error to allow defendants to proceed under the protective sweep doctrine nor to instruct the jury on it.

ORDER

IT IS ORDERED that plaintiff Phillip Dunn's motion for recusal (dkt. #102) and motion for a new trial (dkt. #101) are DENIED.

Entered this 30th day of September, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11